1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                          DISTRICT OF NEVADA
8                                         * * *
                                          )
9  BRANCH BANKING AND TRUST               )
   COMPANY, a North Carolina banking      )
10 corporation,                            )      2:12-cv-01781-LRH-PAL
                                          )
11                Plaintiff,               )
                                          )      ORDER
12 v.                                      )
                                          )
13 27TH & SOUTHERN HOLDING, LLC, a         )
   Nevada limited liability company, YOEL )
14 INY; NOAM SCHWARTZ; YOEL INY,           )
   Trustee of the Y&T INY FAMILY TRUST    )
15 dated June 8, 1994; NOAM SCHWARTZ,      )
   Trustee of the NOAM SCHWARTZ TRUST     )
16 dated August 19, 1999; D.M.S.I., LLC, a )
   Nevada limited liability company; and DOES )
17 1 through 10, inclusive,                )
                                          )
18                Defendants.              )
                                          )
19                                         )
   27TH & SOUTHERN HOLDING, LLC, a         )
20 Nevada limited liability company, YOEL )
   INY; NOAM SCHWARTZ; YOEL INY,           )
21 Trustee of the Y&T INY FAMILY TRUST    )
   dated June 8, 1994; NOAM SCHWARTZ,      )
22 Trustee of the NOAM SCHWARTZ TRUST     )
   dated August 19, 1999; and D.M.S.I., LLC, a )
23 Nevada limited liability company,       )
                                          )
24                Counterclaimants.        )
                                          )
25
26 ///

Before the Court is Plaintiff Branch Banking and Trust Company's ("Branch Banking") Motion to Dismiss Counterclaims. Doc. #23.[1] Defendants 27th & Southern Holding, LLC; Yoel Iny; Noam Schwartz; Yoel Iny, trustee of the Y&T Family Trust dated June 8, 1994; Noam Schwartz, trustee of the Noam Schwartz Trust dated August 19, 1999; and D.M.S.I., LLC (collectively "Defendants") filed a Response (Doc. #27) to which Branch Banking replied (Doc. #31).

I.   **Facts and Background**

This action arises out of Defendants' alleged breach of a secured loan agreement. Following a judicial foreclosure sale on the real property securing the loan, Branch Banking filed the present action to obtain a deficiency judgment against Defendants. Doc. #1. On December 2, 2013, Defendants filed an Answer and Counterclaim against Branch Banking asserting claims for breach of contract and promissory estoppel. Doc. #17. Therein, Defendants allege that they entered into an oral contract with Branch Banking, whereby representatives of Branch Banking, Oscar Bruni ("Bruni") and Robert Thomas ("Thomas"), explicitly promised that Branch Banking would "provide Defendants with adequate time and opportunity to propose and implement a real estate property action plan to address and work-out certain Colonial Bank loans ('Work-out Agreement')." *Id.* at ¶8. In reliance thereon, Defendants claim to have "expended many, many hours and substantial money, executing tasks in furtherance of the Work-out Agreement," and "submitted extensive financial information, documentation and proposed plan(s) to [Branch Banking]." *Id.* at ¶¶10-11. In return for this performance, Defendants allege that "[Branch Banking] orally agreed to forbear from enforcing certain rights under the [aforementioned loan] and otherwise refrain from foreclosing on the property securing said [l]oan." *Id.* at ¶12. Branch Banking allegedly "breached the Work-out Agreement by arbitrarily rejecting Defendants' proposal(s) and returning checks to Defendants which contained interest payments" and "initiating

---

[1] Refers to the Court's docket number.

2

foreclosure proceedings on . . . the property securing [the aforementioned loan], resulting in foreclosure at liquidated values in a depressed real estate market." *Id.* at ¶¶13-14. On December 26, 2013, Branch Banking filed the present Motion to Dismiss Counterclaims. Doc. #23.

**II.   Legal Standard**

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the Court to draw the reasonable inference, based on the Court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 678-79. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the Court accepts the facts alleged in the complaint as true. *Id.* However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 681) (brackets in original)

3

(internal quotation marks omitted). The Court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 556 U.S. at 681). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

**III.   Discussion**

    **A.   First Cause of Action for Breach of Oral Contract**

First, Branch Banking contends that the alleged oral contract at issue is void pursuant to subsection (1) of the Nevada Statute of Frauds, which requires a writing for "[e]very agreement that, by the terms, is not to be performed within 1 year from the making thereof." Nev. Rev. Stat. 111.220(1). The Court agrees. Only those oral agreements which are capable of being fully performed within a year from execution are not void under the Statute of Frauds. *See Stanley v. A. Levy & J. Zentner Co.*, 60 Nev. 432, 112 P.2d 1047, 1052 (1941). The fact that performance exceeds one year does not render an agreement void where the terms therein do not indicate that it could not be performed within one year. *See Atwell v. Sw. Secs.*, 107 Nev. 820, 820 P.2d 766, 769 (1991) (finding that verbal contract with indefinite duration was not void under Nevada's Statute of Frauds where there was nothing to indicate that it could not be fully performed within one year). Moreover, the Statute of Frauds does not encompass agreements that are "simply not likely to be performed," or agreements that are "simply not expected to be performed, within the space of a year from the making." *Stanley*, 112 P.2d at 1052 (quoting Browne on the Statute of Frauds, Page 327, § 273, 4th Ed.). The statute does, however, apply to those agreements "[w]here the manifest intent and understanding of the parties, as gathered from the words used and the circumstances existing at the time [of execution], are that the contract shall not be executed within the year[.]" *Stanley*, 112 P.2d at 1052.

Here, it is manifest from the terms of the alleged agreement that Branch Banking could not have fully performed its obligations under the alleged agreement within one year. According to

4

Defendants allegations, Branch Banking "agreed to forbear from enforcing certain rights under the [aforementioned loan] and otherwise refrain from foreclosing on the property securing said [l]oan." Doc. #17, ¶12. Thus, in order for Branch Banking to fully perform under the alleged agreement, it could *never* exercise certain rights under the loan agreement or foreclose on the property securing the loan. Because this provision plainly envisions that Branch Banking would have an indefinite obligation not to enforce certain rights or foreclose, the agreement, by its terms, could not be fully performed in one year.

In this regard, the Court agrees with the reasoning set forth in *MGM Desert Inn, Inc. v. Shack*, 809 F. Supp. 783 (D. Nev. 1993). Similarly there, the defendant alleged that the MGM orally "agreed to advance him money with which to gamble, he agreed to write them a check to cover this advance, but they agreed not to present this check for payment." *Id.* at 786. The defendant further argued that, by presenting his check for payment, the MGM had violated this oral contract. *Id.* There, the court found that Nevada's Statute of Frauds rendered the defendant's argument meritless. In essence, the MGM was not capable of fully performing its end of the bargain—not presenting the check for payment—within one year. Instead, MGM's alleged obligation not to present the check for payment endured indefinitely, and thus well beyond one year. For the same reasons, the Court finds that the Nevada's Statute of Frauds renders the alleged oral agreement between Branch Banking and Defendants void.

Moreover, while the alleged agreement does not explicitly set forth a specific time frame in which the real estate property action plan was to be executed, and it is conceivable that Defendants could have proposed and implemented a plan within one year, the circumstances suggest that it was not in the parties' contemplation at the time. *See Stanley*, 112 P.2d at 1052 ("[T]he possibility of performance which would take an agreement out of the statute of frauds must be such as could fairly and reasonably be said to have been within the contemplation of the parties. An unforeseen or remote possibility will not rescue the agreement from invalidity."). Here, Defendants' claim necessarily relies on an assertion that two years was not an "adequate time and opportunity to

propose and implement a real estate property action plan." Doc. #17, ¶8. Defendants' admission in this regard strongly demonstrates that they did not anticipate or intend to fully perform the oral agreement within the span of one year. For this reason as well, the alleged agreement is void for failure to comply with the Nevada Statute of Frauds. Accordingly, Defendants' claim for breach of oral contract fails on this basis.

Second, Branch Banking contends that Defendants' claim fails because the underlying loan documents[2] do not permit oral modifications. Specifically, the Promissory Note Secured by Deed of Trust[3] provides, in relevant part, "No waiver by Lender of any of any right or remedy shall be effective unless in writing and signed by Lender[.]" Doc. #23, Ex. 1, p. 3. Moreover, the Guarantee[4] provides, in relevant part, "No provision of this Guarantee or right granted to Lender hereunder can be waived in whole or part nor can Guarantor be released from Guarantor's obligations hereunder except by a writing duly executed by an authorized officer of Lender." Doc. #23, Ex. 2, p. 7.

"[W]hen a contract is clear on its face, it will be construed from the written language and enforced as written." *Canfora v. Coast Hotels & Casinos, Inc.*, 121 Nev. 771, 776 (2005) (internal

---

[2] While courts do not typically consider material beyond the pleadings in evaluating a motion to dismiss, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, Branch Banking attached and incorporated the relevant loan documents to its Complaint. *See* Doc. #1, Ex. 1; Doc. #1, Ex. 3. Moreover, Defendants acknowledged signing the loan documents. *See* Doc. #17, ¶¶14-16. Accordingly, the Court shall consider the loan documents in evaluating the viability of Defendants' Counterclaims for breach of oral contract and promissory estoppel.

[3] Defendant 27th & Southern Holding, LLC executed the Promissory Note Secured by Deed of Trust.

[4] Defendants, Yoel Iny; Noam Schwartz; Yoel Iny, trustee of the Y&T Family Trust dated June 8, 1994; Noam Schwartz, trustee of the Noam Schwartz Trust dated August 19, 1999; and D.M.S.I., LLC executed the Guarantee agreement.

quotation marks and citation omitted).  Here, the Court finds no ambiguity in the terms of the aforementioned loan documents.  The clauses unequivocally provide that Branch Banking may not waive any of its rights or remedies under the loan agreements unless it does so in writing.  Accordingly, the Court is bound to an interpretation of these terms whereby any modification affecting Branch Banking's rights or remedies shall require a writing.  *See id.* ("[t]he court has no authority to alter the terms of an unambiguous contract").  Because any agreement to forbear enforcement of its right to foreclose on the underlying property securing the loan is, in essence, a waiver by Branch Banking of its rights and remedies under the aforementioned loan documents, the Court finds that the alleged Work-out Agreement to this effect is unenforceable as it fails to comply with the explicit writing requirement in the loan agreements.  As such, Defendants' breach of oral contract claim fails on this ground as well.

### B. Second Cause of Action for Promissory Estoppel

Here, the Court finds that Defendants' promissory estoppel claim must fail because it is based upon an alleged promise that is not sufficiently definite to enable enforcement.  Indeed, "[a] promise giving rise to the application of the doctrine of promissory estoppel must be 'clear and unambiguous' in its terms." *Hubel v. BAC Home Loans Servicing, LP*, Case No. 2:10-CV-01476-JCM-LRL, 2010 WL 4983456, *3 (D. Nev. 2010) (quoting *Miller Auto. Group, Inc. v. Gen. Motors Corp.*, 216 F.3d 1083, at *1 (9th Cir. 2000); *Navarro v. BAC Home Loans LLC*, Case No. 2:11-CV-01557-JCM-GWF, 2011 WL 6012547, at *2 (D. Nev. 2011).  To recognize and enforce a promise, "it must be definite enough so that the court can 'determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.'" *Hubel*, 2010 WL 4983456, at *3; *Navarro*, 2011 WL 6012547, at *2 (quoting *Ladas v. Cal. State Auto. Ass'n*, 19 Cal. App. 4th 761, 770 (1993)).  "If the promise is 'vague, general or of indeterminate application,' it is not enforceable." *Id.* (quoting *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 446 (9th Cir. 1992)).

///

Defendants have failed to sufficiently allege a promise from which the Court could determine the scope and duties of the parties. Branch Banking's alleged promise to "provide Defendants with adequate time and opportunity to propose and implement a real estate property action plan to address and work-out certain Colonial Bank loans" (Doc. #17, ¶8) is entirely lacking in detail. Moreover, Branch Banking's alleged promise to "otherwise refrain from foreclosing on the property" (Doc. #17, ¶12) is similarly indefinite. Under no circumstances could the Court enforce such promises because there is no indication of the terms according to which Defendants would "address and work-out" the loans and Branch Banking would refrain from foreclosing. Specifically, Defendants do not allege that Branch Banking promised to modify the terms of its loan agreement. *See Brennan v. Wells Fargo & Co.*, No. 5:11-cv-00921 JF (PSG), 2011 WL 2550839, at *2 (N.D. Cal. June 27, 2011) (plaintiff failed to adequately plead a claim for promissory estopped where "there [was] no allegation that Wells Fargo promised to modify the terms of Brennan's loan"). Nor do Defendants set forth any parameters as to Branch Banking's obligation to accept Defendants' proposed work-out plan. *See Melegrito v. CitiMortgage Inc.*, No. C 11-01765 LB, 2011 WL 2197534, at *13 (N.D. Cal. June 6, 2011) ("conclusory allegations about an unspecified individual agreeing to a loan modification with unspecified terms at some point in the unspecified future are insufficient to permit the court to reasonably infer that [defendant] made a clear promise to modify [plaintiff's] loan"). Without greater specificity as to the parties' rights and obligations under the alleged oral contract, the Court would have no rational basis on which to assess damages. Accordingly, the Court finds Defendants have failed to sufficiently allege a claim for promissory estoppel.

Moreover, in light of the aforementioned loan provisions, the Court also finds that Defendants cannot establish the requisite elements of promissory estoppel. Given the explicit language therein, Defendants cannot claim to be ignorant of the fact that Branch Banking's alleged promise to waive its right to foreclose on the underlying property would have to be reduced to writing. *See Pink v. Busch*, 100 Nev. 684, 689 (1984) ("'To establish promissory estoppel four

elements must exist: (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped.'") (quoting *Cheqer, Inc. v. Painters & Decorators Joint Comm., Inc.*, 98 Nev. 609, 614 (1982)). Moreover, to the extent Defendants claim to have relied on Branch Banking's alleged oral promise not to foreclose on the underlying property, their reliance was not reasonable given the explicit writing requirement in the loan documents. *See Aguilar. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 445 (9th Cir. 1992) ("To establish an enforceable contract on a promissory estoppel theory, the [plaintiff] must meet five requirements[:] (1) the existence of a promise, (2) which the promisor reasonably should have expected to induce the promisee's reliance, (3) which actually induces such reliance, (4) that such reliance is reasonable, and (5) that injustice can only be avoided by enforcement of the promise.") (citing *Hass v. Darigold Dairy Products, Inc.*, 751 F.2d 1096, 1100 (9th Cir. 1985); Restatement (Second) of Contracts § 90 (1981)). Accordingly, Defendants' promissory estoppel claim fails on this basis as well.

Branch Banking also contends that Defendants' promissory estoppel claim does not comply with the specificity requirements analogous to the heightened pleading standard for fraud under Nevada and Federal Rule of Civil Procedure 9(b). "Although Rule 9(b) does not expressly apply to promissory estoppel claims, . . . Rule 9(b)'s heightened pleading standard applies because promissory estoppel involves false statements and conduct amounting to misrepresentation." *Hasan v. Ocwen Loan Servicing, LLC*, 2:10-CV-00476-RLH, 2010 WL 2757971, at *2 (D. Nev. 2010). Compliance with this general rule requires "an account of the time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentations." *Id.* (quoting *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007)). For the reasons identified above, the Court concludes that Defendants failed to allege the specific content of Branch Banking's false representations. Accordingly, Defendants' claim for promissory

estoppel also fails for failure to comply with the heightened pleading standard.

Finally, Branch Banking contends that Defendants executed an acknowledgment letter[5] admitting that any acceptance of payments by Branch Banking after Defendants' default did not prejudice Branch Banking with respect to its rights and remedies under the subject loan agreements. Doc. #23, Ex. 4; Doc. #1, Ex. 8. Specifically, the acknowledgment letter provides, in relevant part,

> While such discussions have been conducted, the Lender has accepted and applied payments under some of all of the Loans even though such Loans have matured and are due and payable in full. The purpose of this letter is to confirm our understanding that the acceptance of such payments post-maturity shall not constitute a waiver by the Lender of any existing defaults under the Loans, or prejudice the Lender in exercising any and all rights and remedies under the loan documents evidencing and/or securing the Loans or under applicable law.
>
> Although the Lender is willing to continue good faith discussions with the Borrowers in an effort to restructure the Loans, it must be made clear that such discussions, and the continued acceptance of payments post-maturity, (i) shall not be construed as an extension of the maturity dates of the Loans, and (ii) are without any prejudice to the Lender in the exercise of its rights and remedies with respect to the Loans. Furthermore, Lender reserves the right in its sole discretion to terminate discussions at any time and thereafter exercise its right and remedies.

Doc. #23, Ex. 4, p. BBT_27th 000088. Moreover, Branch Banking contends that during the course of the loan, each time the loans were modified, the parties agreed to and executed certain "change in terms" agreements which were always reduced to writing. *See, e.g.*, Doc. #1, Ex. 4; Doc. #1, Ex. 5; Doc. #1, Ex. 7.

Based on the acknowledgment letter's language and the parties' previous practices, the Court finds that Defendants cannot dispute that they understood that they were only in

---

[5] Here too, Branch Banking attached and incorporated the acknowledgment letter to its Complaint. *See* Doc. #1, Ex. 8, pp. 5-9. Defendants do not contest the authenticity of the acknowledgment letter. *See* Doc. #17, ¶26. Accordingly, the Court shall consider the acknowledgment letter in evaluating the viability of Defendants' Counterclaim for promissory estoppel.

Defendant Yoel Iny executed the acknowledgment letter as President of, among others, Defendant 27th & Southern Holding, LLC and D.M.S.I., LLC. Defendants Yoel Iny and Noam Schwartz also executed the Acknowledgment on their own behalf.

"discussions" with Branch Banking regarding "possible restructuring of various loans." Defendants were apprised of the true facts regarding discussions to restructure the loans, and thus cannot establish that they reasonably relied on Branch Banking's alleged promises. Accordingly, Defendants' claim for promissory estoppel fails on this basis as well.

IT IS THEREFORE ORDERED that Branch Banking's Motion to Dismiss Counterclaims (Doc. #23) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Counterclaim shall be DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 29th day of March, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE